NOTICE
Decision filed 10/16/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230209-UB

NOS. 5-23-0209, 5-23-0621, 5-23-0622 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | Nos. 20-CF-418, 20-CF-1129, |
| | ) | 21-CF-16 |
| ZOLLIE L. THOMAS, | ) | |
| | ) | Honorable Erick F. Hubbard, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's order denying the defendant's motion to reconsider the defendant's sentence is affirmed where the defendant was not prejudiced by counsel's failure to argue, during the postsentencing proceedings, that a change in the sentencing statute applied to the defendant.

¶ 2    The defendant, Zollie L. Thomas, pled guilty to burglary in three separate cases. Pursuant to those pleas, he was allowed to participate in the drug court program. However, the State later petitioned to terminate the defendant's participation from that program. After the defendant admitted to the allegations in the State's petition, the circuit court of Macon County granted the State's petition and sentenced the defendant to three consecutive eight-year prison terms. The trial court also subsequently denied the defendant's motion to reconsider his sentence.

1

¶ 3     In a decision entered January 14, 2025, this court affirmed the circuit court's decisions revoking the defendant's participation in the drug court program, sentencing the defendant to three consecutive eight-year prison terms on the underlying charges, and denying the defendant's motion to reconsider his sentence. *People v. Thomas*, 2025 IL App (5th) 230209-U. On February 4, 2025, the defendant filed a petition for rehearing, which this court denied on February 5, 2025. The defendant then filed a petition for leave to appeal in the supreme court. On May 28, 2025, that petition was denied, but the supreme court issued the following supervisory order:

> "In the exercise of this Court's supervisory authority, the Appellate Court, Fifth District, is directed to vacate its February 5, 2025, order in *People v. Thomas*, case Nos. 5-23-0209, 5-23-0621, and 5-23-0622 cons., denying the petition for rehearing. The appellate court is directed to allow the petition for rehearing and address the defendant's argument that the appellate court's conclusion that counsel was not ineffective for failing to file a motion to reconsider sentence because such a motion was unavailable is based on a misreading of the record."

¶ 4     Consequently, on July 15, 2025, pursuant to the Illinois Supreme Court's supervisory order, we vacated our February 5, 2025, order denying the defendant's petition for rehearing. In addition, we allowed the defendant's previously filed petition for rehearing, withdrew our original decision, and requested that the parties file an answer and a reply to the petition for rehearing. In light of the supervisory order and the parties' subsequent filings, this decision will now stand as our disposition of this matter. For the reasons stated below, we affirm.

¶ 5                                I. BACKGROUND

¶ 6     The State charged the defendant with burglary in case Nos. 20-CF-418, 20-CF-1129, and 21-CF-16. At the May 18, 2021, combined hearing on these and other cases, the defendant pled

guilty to one count of burglary in each case listed above. In exchange for the plea, the State dismissed the additional counts in case Nos. 20-CF-418, 20-CF-1129, and 21-CF-16, and entirely dismissed four other cases. Also, as part of the plea, the defendant consented to participate in the drug court program. During the hearing, the trial court admonished the defendant about the charges and possible sentences, and the rights he would be waiving by pleading guilty. The trial court and the parties agreed that all three sentences, should they be imposed, would be mandatorily consecutive to one another. Also, the State indicated that the defendant was eligible for mandatory Class X sentencing based on his criminal history. The trial court then questioned the defendant to determine whether the guilty plea was knowingly and voluntarily made. After the State read the factual basis for the plea, the trial court questioned the defendant as to whether the defendant understood the terms and conditions of the drug court program. In particular, the trial court questioned the defendant as to whether the defendant understood that unsuccessful termination or discharge from the drug court program would result in him being sentenced on each of the three burglary charges. The defendant indicated that he understood and that he was freely and voluntarily consenting to participate in the drug court program. The trial court then accepted the defendant's guilty plea, finding that it was knowingly, voluntarily, and intelligently made; and the trial court admitted him into the drug court program.

¶ 7       On July 8, 2021, the State petitioned to terminate the defendant from the drug court program, alleging that the defendant had failed to appear at probation appointments and drug screens. On August 26, 2021, following the trial court's admonitions as to the nature of the State's allegations and as to the sentencing ranges for the burglary charges, the defendant admitted to the allegations in the State's petition. The trial court then determined that the defendant's admission

3

was knowingly, voluntarily, and intelligently made and set the matter for a hearing to decide if the defendant should be terminated from the drug court program.

¶ 8    At some point after the defendant's admission, the defendant obtained new counsel. Thereafter, at the October 6, 2021, hearing to determine whether to dismiss the defendant from the program, Jennifer Embree, the defendant's hybrid court probation officer, testified that the defendant initially complied with the program but soon began missing drug screens and probation appointments. The defendant missed six drug screens, one of which was excused. Also, the defendant missed four probation appointments, one of which was excused due to a dental appointment. For the drug screens that he appeared, he tested negative on one but positive for cocaine and alcohol at others. Also, during his time in the program, the defendant was charged with new offenses, and he was in jail at some point.

¶ 9    If the defendant missed an appointment, Embree mailed the defendant a new appointment letter to the address that the defendant provided or gave the defendant a reminder slip when he appeared in court. Embree confirmed that the defendant had not given her the apartment number to his apartment. Embree indicated that the defendant had not made any forward progress in the program. Embree explained that the defendant had dental work that could have been a reason for why he missed some appointments, but it was not the reason for every missed appointment.

¶ 10    Lena Pinkston, the defendant's behavioral health counselor, testified that the defendant's attendance at the group sessions was minimal. He attended only 7 of 33 group sessions, some of which he missed because he had dental appointments. Pinkston also indicated that the defendant's participation in the group sessions that he attended was minimal, although he was alert and paying attention. Pinkston explained that she did not have an opportunity to talk with the defendant about residential treatment because he did not fully engage in services. On July 8, 2021, the defendant

4

was in the Macon County Jail and could not attend group sessions during the time that he was there. Pinkston concluded that the defendant was not benefitting from the program because he did not attend treatment sessions.

¶ 11　　The defendant testified that he had not received the mailed notices of his missed probation appointments but acknowledged that Embree had given him notices of new appointments in court. The notices were mailed to 1880 N. Church, but his address was 1580 N. Church Street, apartment 1. He had lived in that apartment since 2020. The defendant explained that he was having serious issues with his teeth during the drug court program and that he was self-medicating because prescription medication did not alleviate the pain. The defendant had talked with his counselor about doing inpatient treatment to get more support for his addiction, but he was never placed in inpatient treatment.

¶ 12　　After hearing the testimony, the trial court found that the defendant was not performing satisfactorily in the program due to his lack of participation and failure to communicate with the probation department. Thus, the trial court dismissed the defendant from the drug court program and set the matter for sentencing.

¶ 13　　At the November 10, 2021, sentencing hearing, the State produced evidence of two additional burglary cases that were being brought against the defendant. Before hearing arguments, the trial court indicated that the sentencing range for each burglary offense was 6 to 30 years' imprisonment and that the offenses would be mandatorily consecutive to each other. In mitigation, the defendant testified that he began using heroin at the age of 14 to deal with pain from a gunshot wound. He was only sober when he was in prison. His drug habit cost more money than he could earn, so he stole property to sell for money to buy drugs. The defendant also made a statement in allocution, in which he indicated that, at the time that he was in the drug court program, he was in

5

a lot of pain due to his teeth, but he tried his best to comply with the program. He expressed disappointment with himself and indicated that he wanted another chance to get treatment for his addiction.

¶ 14    The State then recommended a 10-year sentence in each case for a total of 30 years. The State noted that the defendant had a lengthy criminal history of being convicted of burglary. In mitigation, the defendant's counsel argued that the defendant was a drug addict. Noting that the defendant was 63 years old, defense counsel argued that a 30-year prison term was essentially a life sentence for the defendant. Counsel argued that the defendant committed crimes to support his drug addiction and that the defendant should not be treated as a threat to society. Thus, counsel requested that the defendant be sentenced to the minimum sentence for each burglary. After hearing the arguments, the trial court, noting that the defendant's criminal history was significant, sentenced the defendant to eight years' imprisonment in each case, with the sentences to run consecutively. The trial court then admonished the defendant as to his right to appeal.

¶ 15    On November 29, 2021, the defendant filed a *pro se* motion to reconsider the judgment. In the motion, the defendant argued, among other things, that his plea counsel was ineffective for advising him to plead guilty to violating the terms of the drug court program in order to stay in the program, that the trial court erred in terminating him from the program based on his failure to attend meetings, and that the trial court abused its discretion in sentencing him to three consecutive eight year sentences and sentencing him as a Class X offender. The hearing on the defendant's *pro se* motion was delayed for several months. However, at the September 8, 2022, hearing, the trial court, noting that the defendant had filed the motion *pro se* while he was still represented by counsel, struck the motion and allowed counsel to submit "whatever filing" counsel felt appropriate.

¶ 16    At the November 22, 2022, status hearing, the defendant's counsel indicated that he did not file a postjudgment motion at the defendant's request because counsel did not agree with the allegations that the defendant had asserted in the defendant's *pro se* motion, especially regarding how the trial court conducted itself during the proceedings. Counsel indicated that the State made multiple allegations in support of its petition to terminate the defendant from the drug court program, but the defendant was "hung up" on one particular allegation, *i.e.*, that the trial court had told him that he could miss a probation appointment. Counsel indicated that, if the trial court wished, he could argue that issue at a subsequent hearing. However, counsel noted that it likely would not make any difference as there was a "laundry list" of other reasons for why the defendant was removed from the program. Counsel also noted that this issue was not mentioned to him until after the sentencing. The trial court then set a hearing date where counsel could present any good faith arguments on the defendant's behalf.

¶ 17    Thereafter, on December 6, 2022, an amendment to section 5-8-4 of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4 (West 2020)) took effect. The amendment provided that "[i]f a person charged with a felony commits a separate felony while on pretrial release," the trial court has discretion to impose consecutive sentences. 730 ILCS 5/5-8-4(c)(3) (West 2022). Previously, consecutive sentences were mandatory in such a situation. See 730 ILCS 5/5-8-4(d)(8) (West 2020).

¶ 18    On January 25, 2023, the trial court held a hearing, at which the defendant was not present because he remained in the Illinois Department of Corrections (IDOC). During the hearing, defense counsel indicated that he believed that the defendant did not need to be present at the hearing to proceed. Counsel also indicated that, rather than filing a new motion to reconsider the sentence, he was adopting one paragraph of the defendant's *pro se* filing, which was the only

7

paragraph from the defendant's *pro se* motion that he believed had merit. Specifically, counsel adopted the allegation that the trial court erred in terminating the defendant from the drug court program based on missed appointments when the trial court previously told the defendant to communicate with probation and treatment personnel over the telephone about the dental problems that the defendant was experiencing. Counsel explained that, even though he had not filed any brief or authority on the issue, he was prepared to make the argument.

¶ 19    However, before counsel presented any argument as to that issue, counsel discussed the other allegations in the defendant's *pro se* filing and explained why he was not adopting those allegations. Then, defense counsel indicated that his adoption of the remaining issue was a "frivolous adoption." Counsel indicated that the defendant's position was that the defendant had missed a probation appointment after the trial court told him to take care of his dental problems and that he should not have been terminated from the program for missing the appointment. However, counsel noted that the defendant missing that appointment was just one reason for why the defendant was terminated from the program. The State agreed and indicated that the defendant was using alcohol and cocaine during the time period that he missed the appointment, that the defendant's dental problem was just one issue discussed at the relevant hearing, and that the trial court made its decision based on all of the evidence. After hearing arguments, the trial court denied the adopted motion.

¶ 20    On February 16, 2023, the defendant simultaneously filed a *pro se* motion to withdraw his guilty plea and to vacate his sentence and a notice of appeal in case No. 20-CF-418. On March 3, 2023, the defendant also filed a *pro se* motion to supplement his petition to withdraw his guilty plea. At the March 29, 2023, hearing, the trial court found that, because the defendant had filed a notice of appeal, the trial court lacked jurisdiction to consider the *pro se* motion to withdraw the

8

guilty plea. Subsequently, we granted the defendant's motions for leave to file late notices of appeal in case Nos. 20-CF-1129 and 21-CF-16. We also granted his motion to consolidate the appeals.

¶ 21 In his appellant briefs, the defendant argued that his postsentencing counsel[1] was ineffective where counsel did not file a motion to reconsider the defendant's sentence based on the change in the sentencing statute. On January 14, 2025, this court affirmed the trial court's denial of the motion to reconsider, finding that postsentencing counsel was not ineffective because the defendant's underlying guilty plea was "partially negotiated," and thus counsel could not have filed a motion to reconsider sentence. *People v. Thomas*, 2025 IL App (5th) 230209-U. However, in their subsequent filings following the supreme court's issuance of its supervisory order, both parties agree that the defendant's guilty plea was not a negotiated plea, and that the defendant could have filed a motion to reconsider sentence within 30 days of the sentence, which the defendant did here. After carefully reviewing the record, we agree with the parties that this court's previous decision was based on a misreading of the record. As that order has already been withdrawn, we will now consider the arguments that the parties raised in their appellate briefs.

¶ 22                                    II. ANALYSIS

¶ 23 Prior to December 6, 2022, section 5-8-4(d) of the Unified Code of Corrections provided as follows:

"(d) Consecutive terms; mandatory. The court shall impose consecutive sentences in each of the following circumstances:

---

[1]The defendant's brief argues that his plea counsel was ineffective, but there was a change of counsel after the defendant admitted to the allegations in the State's petition to terminate. Thus, it appears that the defendant is arguing that his subsequent counsel is ineffective. Accordingly, for clarity purposes, we will refer to the defendant's subsequent counsel as postsentencing counsel in our analysis.

***

(8) If a person charged with a felony commits a separate felony while on

pretrial release or in pretrial detention in a county jail facility or county detention

facility, then the sentences imposed upon conviction of these felonies shall be

served consecutively regardless of the order in which the judgments of conviction

are entered." 730 ILCS 5/5-8-4(d)(8) (West 2020).

¶ 24    Then, on December 6, 2022, an amendment to section 5-8-4 became effective that provides

as follows:

"(c) Consecutive terms; permissive. The court may impose consecutive sentences

in any of the following circumstances:

***

(3) If a person charged with a felony commits a separate felony while on

pretrial release or in pretrial detention in a county jail facility or county detention

facility, then the sentences imposed upon conviction of these felonies may be

served consecutively regardless of the order in which the judgments of conviction

are entered." 730 ILCS 5/5-8-4(c)(3) (West 2022).

¶ 25    In short, under the former law, when a defendant committed a separate felony while on

pretrial release, he had to serve any sentences imposed for those offenses consecutively. Under the

new law, the sentencing court has discretion to make the sentences consecutive or concurrent. See

*In re Estate of Ahmed*, 322 Ill. App. 3d 741, 746 (2001) (when a statute uses the word "may," we

interpret the statute as permissive).

¶ 26    Here, the defendant argues that his postsentencing counsel provided ineffective assistance

when counsel failed to argue during the postsentencing proceedings that this amendment, which

10

took effect while the defendant still had an opportunity to file a postsentencing motion, applied to his case. Specifically, the defendant contends that his counsel should have filed a postjudgment motion, arguing that the defendant should receive a new sentencing hearing at which the trial court would have discretion to impose concurrent sentences rather than consecutive ones as required by the former statute. In response, the State contends that counsel was not ineffective for failing to request the trial court apply the amendment to the defendant because the amendment did not retroactively apply to the defendant pursuant to section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2022)).

¶ 27 Where the temporal reach of a new law is not explicitly indicated in its text, as in this case, then the amendment's temporal reach is provided by default in section 4 of the Statute on Statutes (*Id.*). *People v. Stevenson*, 2023 IL App (3d) 220055, ¶ 17. Section 4 states as follows:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." 5 ILCS 70/4 (West 2022).

¶ 28    Section 4 has been interpreted to mean that procedural amendments to statutes will be applied retroactively while substantive changes are prospective only. *People v. Hunter*, 2017 IL 121306, ¶ 22. Thus, under section 4, a procedural law amendment applies to "the proceedings thereafter," which has also been referred to as "ongoing proceedings." *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶¶ 28, 30. "Section 4 contemplates the existence of proceedings after the new or amended statute is effective to which the new procedure could apply." *Hunter*, 2017 IL 121306, ¶ 31. In *Hunter*, our supreme court found that there were no "proceedings thereafter" capable of conforming to the relevant amended statute. *Id.* ¶ 32. There, the amended statute at issue became effective when the case was pending on appeal, after the proceedings in the trial court had concluded. *Id.* ¶¶ 29, 31. The supreme court found that since the trial court proceedings had concluded, and no further trial court proceedings were necessitated by reversible error, applying the amended statute retroactively would result in the court effectively creating new proceedings for the sole purpose of applying a procedural statute that postdates the trial and sentence. *Id.* ¶ 33.

¶ 29    In addition, section 4 contains a specific provision that is applicable to new laws mitigating a penalty or punishment. 5 ILCS 70/4 (West 2022). Thus, regardless of whether the statutory change is properly labeled substantive or procedural, section 4 provides that if the change mitigates a punishment, the change could not be applied to defendants who were sentenced before the statute took effect. *People v. Brown*, 2023 IL App (4th) 220400, ¶ 39.

¶ 30    To establish that counsel was ineffective, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result. *People v. Manning*, 227 Ill. 2d 403, 412 (2008). Counsel's performance is measured by an objective standard of competence under prevailing professional norms. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). The effectiveness of counsel must be assessed against an "objective standard of reasonableness from

12

the prospective of the time of the alleged error and without hindsight." *People v. Reed*, 2014 IL App (1st) 122610, ¶ 66.

¶ 31    In this case, we find that the defendant's counsel's performance was deficient during the postsentencing proceedings. Following the defendant's sentencing, the defendant filed a *pro se* motion to reconsider the judgment. However, because the defendant had filed the motion *pro se* while he was still represented by counsel, the trial court struck the motion and allowed counsel to submit "whatever filing" counsel felt appropriate. Since the trial court did not place any restrictions on the type of motion that could be filed or the arguments that could be made, the defendant's counsel had the opportunity to ask the trial court to apply the amended sentencing statute to the defendant. However, instead of filing a new postjudgment motion seeking application of the amendment to the defendant, the defendant's counsel adopted a small portion of the defendant's original *pro se* postsentencing motion. Also, during the hearing on the motion to reconsider, the defendant was not present because he was in IDOC custody and was not brought to court for the hearing. Counsel, noting that the defendant was not present at the hearing, indicated that he did not believe that the defendant needed to be present for them to proceed. Then, during the hearing, counsel did not provide any argument in support of the adopted argument and essentially conceded that the trial court should deny the argument. Thus, we conclude that counsel's performance was objectively deficient as counsel failed to advocate on the defendant's behalf.

¶ 32    As for the prejudice prong of the *Strickland* test, a defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v. Houston*, 226 Ill. 2d 135, 144 (2007). Counsel may be ineffective for failing to file a motion where a reasonable probability exists that such a motion would have been granted. *People v. Henderson*, 2013 IL 114040, ¶ 12.

13

¶ 33    The defendant here argues that, had postsentencing counsel filed a motion to reconsider the sentences arguing that the amended sentencing law applied, there was more than a reasonable probability that the trial court would have found that the amendment applied to the defendant, granted the motion, and conducted a new sentencing hearing. In making this argument, the defendant acknowledges that, under the above language of section 4 of the Statute on Statutes, a statutory change that mitigates punishment does not apply to defendants who were sentenced before the statute took effect. However, the defendant contends that the amendment did not mitigate his sentences as it did not impact the severity of the individual sentences. He instead argues that the amendment gave the trial court discretion over the manner in which the sentences were served, *i.e.*, whether the sentences were served concurrently or consecutively. Thus, he contends that this specific provision in section 4 of the Statute on Statutes would not apply to him.

¶ 34    Assuming *arguendo* that the statutory change did not mitigate the defendant's punishment, the defendant notes that the amendment would then only apply to him if it was a procedural change that could be applied in ongoing trial court proceedings. The defendant argues that the amendment was procedural in nature because it governed the procedure by which defendants are sentenced. Also, in arguing that the amendment could be applied in ongoing proceedings or "proceedings thereafter," the defendant distinguishes between a judgment for the purposes of applying the mitigation provision in section 4 and the "proceedings thereafter" language used for the purpose of applying a procedural amendment in section 4. Specifically, the defendant contends that although a final judgment in a criminal case is the sentence, and therefore the mitigation provision cannot be applied to postsentencing proceedings, a hearing on a postsentencing motion constitutes a proceeding "thereafter" or an ongoing proceeding during which a procedural amendment would apply.

14

¶ 35    In response, the State contends that, regardless of whether the amendment was procedural or substantive, the amendment mitigated the defendant's sentence by allowing him to be sentenced to concurrent terms, which would make his total sentence less severe. In the alternative, the State argues that, even if we find that the amendment was a procedural change that did not mitigate the defendant's sentences, the defendant cannot show that the amendment should be retroactively applied because there were no longer ongoing proceedings at the time the amendment went into effect. Citing *People v. Brown*, 2024 IL 129585, ¶ 42, the State argues that since the defendant's sentence had been imposed and rendered a final judgment in the case, the amendment, which took effect after the defendant's sentencing, did not apply to him. Thus, the State argues, even though the defendant had a pending motion to reconsider sentence, the proceedings were not ongoing as the final judgment in a criminal case has consistently been held to be the sentence. Accordingly, the State contends that the defendant was not prejudiced by counsel's failure to ask for the retroactive application of the sentencing amendment because the amendment would not have applied to the defendant as he had already been sentenced.

¶ 36    Even assuming that the defendant is correct that the amendment did not mitigate his sentence, and that the amendment was a procedural change, we conclude that the defendant cannot show prejudice because the proceedings were not ongoing when the amendment took effect. In the defendant's briefs, he relies on *People v. Spears*, 2022 IL App (2d) 210583, to support his argument that the proceedings in this case were ongoing when the amendment took effect. However, after the briefing was completed in this case, the supreme court issued its opinion in *Brown*, 2024 IL 129585, which overruled *Spears*. In *Spears*, the defendant was sentenced as a Class X offender on the Class 1 felony due to his criminal history. *Spears*, 2022 IL App (2d) 210583, ¶ 21. However, while his amended motion to reconsider the sentence was pending, the

15

legislature amended the relevant statute, and under the statute as amended, the defendant would not have been subject to sentencing as a Class X offender. *Id.* ¶ 28. The defendant argued that he was entitled to elect the benefit of the amendment because his case was pending in the trial court at the time of the amendment. *Id.* ¶ 27. The appellate court agreed, concluding that the underlying proceedings in the trial court remained ongoing when the amendment took effect after sentencing but before the trial court ruled on the defendant's amended motion to reconsider the sentence. *Id.* ¶¶ 21, 29. The appellate court concluded that the underlying proceedings remained ongoing until the trial court issued its denial of the amended motion to reconsider the sentence. *Id.* ¶ 29.

¶ 37    Subsequently, the defendant in *Brown* relied on *Spears* to argue that he had a right to elect to be sentenced under an amended statute that took effect after his sentencing but while his postplea motion was pending in the trial court. *Brown*, 2024 IL 129585, ¶ 38. However, the supreme court found that the *Spears* analysis was misguided, as it looked at the ruling on the amended motion to reconsider sentence instead of the actual imposition of sentence to determine when the judgment was final. *Id.* ¶ 42. The supreme court explained that *Spears* failed to adhere to long-standing case law holding the imposition of a sentence constitutes the final judgment in a criminal case. *Id.* The supreme court also found that because the imposition of the sentence had rendered a final judgment in *Spears*, the defendant could not elect the benefit of the newer version of the statute that took effect thereafter. *Id.*

¶ 38    Then, the supreme court found that the defendant in *Brown* was not entitled to be sentenced under the relevant amendment as the operative time for determining whether the amended statute applied was the date of sentencing and the fact that the defendant had a pending postplea motion did not change the fact that the judgment (*i.e.*, the sentence) had been finalized before the amendment's effective date. *Id.* ¶ 43. Thus, the supreme court rejected the defendant's argument

16

that the judgment was not final and that the proceedings were ongoing due to the pending postplea motion. *Id.*

¶ 39    Consistently with *Brown*, we conclude that the imposition of the sentence in this case was the final judgment, which was entered on November 10, 2021, and thus the trial court proceedings were no longer ongoing when the amendment took effect on December 6, 2022. The fact that the defendant's counsel had an opportunity to file a postsentencing motion does not change the fact that the judgment had been finalized before the amendment's effective date. The defendant acknowledges the similarities between his case and *Brown* but contends that *Brown* is distinguishable as the supreme court specifically noted that section 4 of the Statute on Statutes did not apply in *Brown* because the amendment indicated its temporal scope. We acknowledge that the defendant is correct that the statutory amendment in *Brown* set forth the amendment's temporal scope, and thus the Statute on Statutes did not apply there. However, we note that section 4 did define the temporal scope in *Spears*, and *Brown* found that *Spears*'s reasoning on what constituted a proceeding "thereafter" or an ongoing proceeding under section 4 was misguided. Thus, we reject the defendant's argument that the proceedings were ongoing because his counsel had an opportunity to file a postsentencing motion. Because the defendant was not entitled to be sentenced under an amendment that was not in effect at the time of his sentencing, he suffered no prejudice when defense counsel did not raise this issue in the written postsentencing motion and/or argue it at a postsentencing hearing.

¶ 40    Alternatively, the defendant contends that his counsel was ineffective for failing to ask the trial court to use its inherent power to order a new sentencing hearing to apply the newly amended statute to him. In support of his argument, the defendant cites *People v. Mink*, 141 Ill. 2d 163, 171 (1990), for the proposition that as long as a case is pending before the trial court, the trial court has

17

jurisdiction to reconsider any previously entered order. The defendant contends that because the case was still pending in the trial court and postsentencing counsel had leave to file a postsentencing motion, reasonable plea counsel would have argued for the trial court to reconsider the defendant's sentence based on fundamental fairness principles. However, as we have explained above, although we find that counsel's performance during the postsentencing proceedings was deficient, the defendant cannot show that he suffered prejudice by counsel's failure to argue that the amendment should apply to his sentence when the amendment was not in effect at the time of his sentencing. Thus, even if the defendant's counsel had argued that the trial court should use its inherent power to reconsider the defendant's sentence under the amendment, the defendant cannot show that there was a reasonable probability that the result of the proceeding would have been different. Accordingly, we conclude that the defendant's postsentencing counsel did not render ineffective assistance.

¶ 41                                    III. CONCLUSION

¶ 42    For the reasons stated, we affirm the trial court's judgment.

¶ 43    Affirmed.